IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**MARCUS DEONTA CHAPMAN**                                                     **PLAINTIFF**

**V.**                                            **CIVIL ACTION NO. 3:11-cv-60-HTW-LRA**

**SHERIFF RANDALL C. TUCKER**                                     **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

THIS CAUSE is before the Court on the Motion for Summary Judgment [24] filed by Defendant Sheriff Randall C. Tucker, who was substituted as Defendant for former Madison County Sheriff Toby Trowbridge under Rule 25(d) of the Federal Rules of Civil Procedure. The Court has considered all of the pleadings, including the responses [26 & 29] filed by Marcus Deonta Chapman [hereinafter "Plaintiff"], his sworn testimony given at the omnibus hearing, his medical records, additional supporting documents, and the applicable law. This review compels the Court to find that the motion is meritorious and should be granted.

1. **Facts**

Jurisdiction of this case is based upon 42 U.S.C. § 1983. Plaintiff was incarcerated in the Madison County Detention Center (hereinafter referred to as "MCDC") in 2006 where he was diagnosed with HIV. During this incarceration, Plaintiff contends that he received four HIV prescriptions and extra portions of food for 3 ½ years until he was released to the free world in May 2010. On or around September 20, 2010, Plaintiff was arrested by the Ridgeland Police Department and was again housed at the MCDC. Upon

admission to the jail this second time, Plaintiff told the staff that he was unable to remember the names of his prescription medications that he took in the free world. Yet Plaintiff confirmed to the Court during his hearing that he was not taking nor had he been taking any medication to treat his HIV infection since his release in May 2010.

Plaintiff alleges that he did not receive any HIV medication for his entire stay at MCDC during this September 2010 through February 2011 incarceration. During the Plaintiff's initial medical staff screening at MCDC he gave the name of three HIV prescribed medications that he had taken at the time of his release from the custody of the Mississippi Department of Corrections ["MDOC"] in May 2010. The Plaintiff signed an authorization for release of medical information to the MSP (a/k/a MDOC) regarding all information relating to his prior HIV treatment on September 20, 2010. According to these records, Plaintiff only received the HIVdrug, Epivir, during his first incarceration. There is no explanation of the discrepancy between the records and Plaintiff's testimony.

Plaintiff's medical records show that he received 150 mg of Epivir twice a day and a One-A-Day vitamin, along with other medications, while housed at MCDC, *i.e.,* from September 23, 2010, through February 11, 2011. Additionally, the nurse who first assessed Plaintiff when he arrived at MCDC gave an order to provide him with a nightly snack; however, this order was subsequently withdrawn once it was determined that the Plaintiff was not at any risk of losing weight. Plaintiff's medical records verify that blood urinalysis tests were performed on January 12, 2011, and that he had a chest x-ray performed on October 1, 2010.

The MCDC physician examined Plaintiff and referred him to an infectious disease physician. An appointment was scheduled for Plaintiff with the specialist on March 1, 2011. However, Plaintiff was transferred from the MCDC on February 10, 2011, prior to his scheduled appointment.

Dinah Hannah, the head nurse at the MCDC, employed by Southern Health Providers ["SHP"], the inmate medical provider, executed an affidavit regarding the procedure in place on September 20, 2010, for commencing a plan of care for a chronic illness inmate brought from the free world to MCDC. Under the SHP's policies and procedures, detainees who have entered the MCDC from the free world will not be prescribed any medication solely on the detainee's representation unless he could provide the MCDC medical staff with the actual prescription medication, and the prescription could be verified by the prescribing physician.

The policy further stated that in the event a detainee is unable to present the prescription medication, the medication will only be prescribed once it can be confirmed through either his free world health care provider or through a previous prison facility where the detainee has been housed. If medication cannot be confirmed, the detainee will only be prescribed medication after being seen by a physician who is qualified to treat his chronic illness.

Plaintiff explained to the Court his concern about the release of his medical records and his health information. He testified that numerous officers asked him about his HIV infection and told other officers about his illness. He alleges that the MCDC

"medical field" is responsible for the release of his confidential medical information to the officers.

Plaintiff testified that he was a female impersonator and that he dresses as a female in the free world. When he was first arrested, he had long hair, eyelashes, and nails. According to Plaintiff, the jail officials questioned him about whether he would be safe if he were housed with men. The officials segregated him from the other male inmates, and this is one of Plaintiff's complaints. Plaintiff does admit that he could have been segregated for his own safety. Plaintiff testified that he was segregated from the general population on numerous occasions, nearly the entire time he was housed in MCDC. According to Plaintiff, the officials explained it was because of the way he looked. His MCDC records corroborate that he had caused problems while housed with other prisoners and complained to Captain Watson about other male prisoners' sexual advances towards him. The detention center records indicate that the Plaintiff requested to be placed in segregation or in a medical cell to keep him separate from sexual advances of other male inmates. On one occasion, Plaintiff was placed in segregation for a period of four days on suicide watch after he expressed suicidal thought to a detention center officer. Plaintiff alleges that when he was segregated from other inmates he was deprived privileges such as watching TV and using the phone.

Plaintiff summarized his charges in his Complaint as: (1) that he was HIV positive and had not received his needed medication for this illness; (2) that MCDC officials failed to provide him with proper medication to treat his illness; (3) that he was segregated

because of his sexual orientation; (4) that officers at MCDC called him names and criticized him; and (5) that medical staff released his confidential medical information.

2. **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The United States Supreme Court has held that this language "mandates the entry of summary judgement, after adequate time for discovery and upon motion, against a party who fails to make sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The substantive law establishes those elements on which a plaintiff bears the burden of proof at trial; only facts relevant to those elements of proof are considered for summary judgment purposes. *Id.* at 332. There is a genuine factual dispute between the parties only "when a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

3. **Legal Analysis**

    A. **Medical Care**

The Eighth Amendment does prohibit conduct which evinces deliberate indifference to a serious medical need by its ban on cruel and unusual punishment; this standard also applies to pretrial detainees. *Hare v. City of Corinth, MS*, *on rehearing en*

*banc,* 74 F.3d 633, 644-646 (5th Cir. 1996), *appeal on remand*, 35 F.3d 320 (5th Cir. 1998). Because Chapman was a pretrial detainee during the time he was held in the Madison facility, the Court has reviewed his claim under the Fourteenth Amendment. *Mayfeather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *Cupit v. Jones*, 835 F.2d 82 (5th Cir. 1987). "[P]retrial detainees are entitled to reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental objective." *Cupit*, 835 F.2d at 85.

The medical care received by a pretrial detainee may be deemed objectively unreasonable where jail officials act "with subjective deliberate indifference to the detainee's rights." *Nerren v. Livingston Police Dep't.*, 86 F.3d 469, 473 (5th Cir. 1996). *Nerren* defined "subjective deliberate indifference" as subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference." *Id.*

The evidence submitted in support of the dispositive motion contains 59 pages of medical records regarding Plaintiff's treatment received while he was housed in Madison County. These records also contain charts regarding the suicide watch he was placed on for a period of time while housed there. The records confirm that Plaintiff was not taking any HIV medications while in the free world, and the jail's policy prevented him from receiving immediate medications. The medical records do indicate that Plaintiff was prescribed 150 mg. of Epivir twice a day after he was initially assessed on September 23, 2010, and that this medication was ordered from the pharmacy. The records also confirm

that Plaintiff was scheduled for an appointment with an infectious disease clinic in March 2011, but he was transferred by MDOC prior to this appointment. Although Plaintiff testified that he lost weight, the records disprove this allegation. His medical records show that Plaintiff weighed 168 pounds when he entered MCDC on September 20, 2010; 173 pounds on September 30, 2010; 171 pounds on January 12, 2011; and 168 pounds on February 8, 2011, two days before he left the MCDC. He was seen by medical staff on September 23, 2010, and prescribed amudivine and a multivitamin. Chest x-rays and other tests were performed on September 30, 2010. He was treated again on January 12, 2011, and on February 9, 2011.

The medical records confirm that Plaintiff complained of a sore in his mouth in late December 2010 and in January 2011. He was examined by medical personnel and the referral to an infectious disease specialist was made. While he was incarcerated in Madison County, Chapman filed approximately seven sick call requests; he was examined or treated by medical personnel on each occasion, according to the records.

Plaintiff was only housed in Madison County the second time for approximately five months. The records do not confirm that his health suffered during this period. His weight was maintained. Although he claims to have not received "his medications," he did receive the medication ordered by medical personnel. Apparently Plaintiff wanted to be treated the same and to be prescribed all of the same medications he had been getting during the earlier incarceration. However, there is no constitutional requirement that the same medical regimen be granted him.

To defeat a summary judgment motion, Chapman must rely on specific evidence in the record and articulate the precise manner in which that evidence supports his claims. *Stults v. Conoco, Inc.,* 76 F.3d 651, 656 (5th Cir. 1996). He cannot rely on unsubstantiated, conclusory assertions or merely present a scintilla of evidence. *Fiesel v. Cherry,* 294 F.3d 664, 667 (5th Cir. 2002), *citing Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). Chapman has not pointed to any objective medical evidence in his records which would support his claims that he was not treated for his HIV. Although he testified that he did not receive any medications, his primary complaint is that he did not receive the HIV medications that he had taken during his first stay at MCDC. The records confirm that he did, in fact, receive an HIV medication soon after his arrival at Madison County. The treatment he received may not have been what he desired, but this Court does not monitor precise treatments given by the medical providers. He has not shown that Defendant Sheriff Trowbridge, or any medical personnel, denied him care for that condition which was constitutionally inadequate. The fact that Chapman may not have been *satisfied* with the treatment or the type and amount of care he received while housed in Madison County is not indicative of its "unreasonableness." "The decision whether to provide additional treatment 'is a classic example of a matter for medical judgment'"and "[a] prisoner's disagreement with his medical treatment, absent exceptional circumstances" does not satisfy the deliberate indifference requirement. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

Chapman's own testimony defies a finding of "indifference." He admits that he was seen by medical personnel upon his arrival and thereafter. He was simply displeased with the care he received. He also confirms that Sheriff Trowbridge was not personally involved in his care; he simply wrote him several letters. Case law in the Fifth Circuit confirms that a prisoner is not entitled to his *choice* of treatments. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992). The fact that a plaintiff was not satisfied with his care does not confirm that his constitutional rights were violated.

This Court cannot interfere with medical personnel's diagnoses or judgment or with the decisions they make relating to the appropriate treatment given an inmate. To prove deliberate indifference, Chapman must show that this Defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346. The records rebut any showing of intentional mistreatment; Chapman's complaints were addressed, not ignored, and there was no "refusal" to treat.

Based upon the unrebutted medical evidence, no constitutional claim has been stated, and the Court shall dismiss Chapman's complaint with prejudice as to his medical care. Additionally, "[u]nder § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Sheriff Trowbridge and his successor contracted the

medical care provided at the jail with SHP. If his medical care was inadequate, Plaintiff must establish pursuant to § 1983 that the policy promulgated by Sheriff Trowbridge at the MCDC was the cause of the alleged violation of his Fourteenth Amendment rights. *Richardson v. Oldham*, 12 F.3d 1373, 1381 (5th Cir. 1994). Plaintiff must show the Court that Sheriff Trowbridge executed a policy, custom, or practice which demonstrates a deliberate indifference to Plaintiff's medical needs, as well as showing that the challenged policy was the driving force of the alleged violation of his constitutional rights. *Monell v. Dept. of Social Sciences*, 426 U.S. 658, 694 (1978). The deliberate indifference standard is a very difficult burden to meet, and Plaintiff has failed to do so under the circumstances of this case. *See Domino v. Texas Dept. Of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

    B.    <u>**Segregation**</u>

Plaintiff charges that while he was housed at MCDC from September 2010 until February 2011, he was segregated from the general population because he was a homosexual female impersonator and because of his HIV-positive status. Plaintiff testified at his omnibus hearing that due to his feminine nature, there was a concern that other male prisoners might be attracted to him. His MCDC records corroborate the Plaintiff's testimony, and confirm that when he was housed among other male prisoners he created a risk both to himself and other detainees. "[T]he identification and segregation of HIV-positive prisoners obviously serves a legitimate penological interest." *Moore v. Mabus*, 976 F.2d 268, 271 (5th Cir. 1992). In *Luken*, the court found that correctional

facilities have a real interest in protecting detainees and held that "administrative segregation without more, does not constitute a deprivation of a constitutionally cognizable liberty interest." *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995), *cert. denied*, 517 U.S. 1196 (1996).

Courts seldom interfere with the administration of correctional facilities. "A detainee's constitutional rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration[.]" *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 85 (1987)). Further, a detainee retains only those rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Based upon Plaintiff's testimony, his MCDC file, and the applicable law, the Court finds that no constitutional claim has been stated.

    **C.**    **Right to Privacy**

In Plaintiff's omnibus hearing, he testified that several unnamed officers informed him that they were aware of his HIV-positive status. He further testified that his confidential medical information must have been released by someone on the medical staff at MCDC. However, nowhere in his Complaint or his testimony does he identify any detention center official who actually made derogatory remarks to him regarding his sexual orientation or his medical status. Generally, the constitutional rights of prisoners are necessarily subject to considerable restrictions and limitations in order for correctional officials to achieve legitimate penological goals and maintain institutional security. *Pell*,

11

417 U.S. at 822.  Segregation of AIDS sufferers from the general population does not violate a prisoner's constitutional right, including privacy, so long as the constitutional right asserted is outweighed by the legitimate penological interest. *Moore*, 976 F.2d at 271.  Additionally, abusive language of a custodial officer does not, even if true, amount to a constitutional violation.  *McFadden v. Lucas*, 713 F.2d 143 (5th Cir. 1983).

The Court concludes that Plaintiff's vague allegations regarding the remarks made by unknown jail officials, or the release of his medical information by an unknown person, do not state a constitutional violation against the Sheriff.

### D.    Defendant Sheriff Toby Trowbridge or Sheriff Tucker

The Court finds that, taking everything Plaintiff has stated as being true, he still will not be able to set forth a constitutional claim upon which relief can be granted. Even if a constitutional violation has been stated, there could be no liability on the part of the Defendant Sheriff.  There are insufficient facts stated by Plaintiff to sustain a claim of supervisory liability against Defendant Sheriff Trowbridge or his successor under § 1983 as to any of Plaintiff's claims.

As stated earlier, there is no *respondeat superior* theory of liability under § 1983. *Monell*, 436 U.S. at 691-95.  To impose liability against the Sheriff in his official capacity under § 1983, Plaintiff must demonstrate a policy promulgated by the Sheriff at the MCDC that was the cause of the alleged constitutional violation.  *Richardson v. Oldham*, 12 F.3d 1373, 1381 (5th Cir. 1994).  Plaintiff admitted at his omnibus hearing that Defendant Sheriff Trowbridge was not personally involved in the provision of his medical

treatment while at MCDC. He stated that the only reason he sued Defendant Sheriff Trowbridge was because he "is over everybody."

Plaintiff's case is not based on Defendant Sheriff Trowbridge's personal involvement or his enforcement of a policy, custom or practice. There is no policy in place at MCDC that provides for inadequate care to detainees, or for releases of unauthorized medical information, or for segregating inmates due to discriminatory policies. There is no §1983 liability based upon a conclusory theory that a defendant is liable because of his supervisory capacity. For these reasons, the Complaint must be dismissed in its entirety against Defendant Sheriff Trowbridge, as well as his successor.

4. **Conclusion**

For the reasons stated herein, the Court finds that Defendant's Motion for Summary Judgment [24] should be and is hereby granted, and the Complaint is dismissed with prejudice. Final Judgment in favor of Defendant Trowbridge and his successor, Randall C. Tucker, shall be entered on this date.

SO ORDERED, this the 30th day of September 2013.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE